**Edward F. KINANE, et al., Appellants,**

v.

**UNITED STATES, Appellee.**

Nos. 08–CM–681, 08–CM–814, 08–CM–815, 08–CM–816, 08–CM–817, 08–CM–818, 08–CM–819, 08–CM–820, 08–CM–821, 08–CM–822, 08–CM–823, 08–CM–824, 08–CM–825, 08–CM–826, 08–CM–827, 08–CM–828, 08–CM–829, 08–CM–830, 08–CM–831, 08–CM–832, 08–CM–833, 08–CM–834, 08–CM–835, 08–CM–836, 08–CM–837, 08–CM–838, 08–CM–839, 08–CM–840, 08–CM–841, 08–CM–881, 08–CM–882, 08–CM–883, 08–CM–884, 08–CM–885.

District of Columbia Court of Appeals.

Argued Nov. 19, 2010.

Decided Jan. 20, 2011.

Mark L. Goldstone, Washington, DC, appointed by the court, for appellants.

Katherine M. Kelly, Assistant United States Attorney, with whom Ronald C. Machen, Jr., United States Attorney, and Roy W. McLeese III, John P. Mannarino, and Magdalena A. Acevedo, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and THOMPSON, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

Following a two-day bench trial, appellants, a group of thirty-four protestors, were convicted of one count of violating 40 U.S.C. § 6135 for unlawfully demonstrating on the Supreme Court plaza or in the Supreme Court building. On appeal appellants request this court to vacate their convictions, contending that: (1) the "display" clause of 40 U.S.C. § 6135 is an unconstitutional restriction on expression; (2) 40 U.S.C. § 6135 was not reasonably enforced because appellants were not informed they had the right to demonstrate on the sidewalk; and (3) a demonstration on the plaza did not violate the statute. This court has already resolved the issues raised in appellants' contentions in favor of the government, and we find no reason to deviate from our previous holdings. Most recently, in *Lawler v. United States*, 10 A.3d 122 (D.C.2010), this court resolved appellants' second and third contentions in favor of the government. Accordingly, we affirm appellants' convictions.

## I.

On January 11, 2008, a large group of people gathered in front of the Supreme Court and demonstrated their opposition to the United States' prison facility in Guantanamo Bay, Cuba. Appellants congregated in front of the Supreme Court to "give voice to . . . all of those in Guantanamo[,]" and to protest "on behalf of the prisoners who are forced to kneel and do not have the right to stand up for themselves. . . ." In addition to protesting on

behalf of the prisoners collectively, some appellants protested on behalf of particular prisoners detained at the facility.

Although the demonstration began on the public sidewalk abutting the Supreme Court, some demonstrators left the sidewalk and protested on the Supreme Court plaza (hereinafter "outside demonstrators") and others protested inside the Supreme Court building (hereinafter "inside demonstrators").

### Outside Demonstrators

The protest began at approximately 1:00 p.m. Shortly thereafter, twenty-seven demonstrators left the sidewalk and entered the Supreme Court plaza.[1] The protestors walked across the plaza to the second set of steps leading to the main doors of the Supreme Court. There, on the command of someone in the group saying, "prisoners kneel," the group knelt down with their hands behind their backs. Some of the demonstrators were wearing orange jump suits, and others were carrying signs that stated, "Shut Down Guantanamo." The Supreme Court police chief gave this group three sets of warnings informing them that they were violating 40 U.S.C. § 6135, and that they would be arrested if they did not leave the plaza. The group did not leave the plaza, and was placed under arrest.

After the initial group kneeled at the steps of the Supreme Court, an individual left the public sidewalk and joined the group. At approximately 1:25 p.m., yet another lone individual walked onto the plaza with a sign that read "Shut Down Guantanamo" and knelt down at the base of the steps. These individuals were also

1. From the public sidewalk, a set of eight steps leads to a landing that is approximately thirty yards long, commonly referred to as the "Supreme Court plaza." The plaza ends with a second set of steps, with thirty-six more steps leading to the main entrance of the Supreme Court.

warned, and were arrested after they failed to leave the plaza.

Almost immediately thereafter, another group of seven demonstrators walked up to the plaza carrying a banner that read, "[S]hut [D]own Guantanamo." Two of the people in the group stood, while the others knelt down. As with the other demonstrators, this group remained on the plaza despite being given three warnings, and was arrested.[2]

### Inside Demonstrators

At the same time, around 1:00 p.m. that afternoon, approximately forty-five individuals gathered in the Upper Great Hall of the first floor of the Supreme Court building. About fifteen to twenty individuals were chanting or singing, while kneeling shoulder to shoulder with their arms interlocked. Many of the people were wearing orange t-shirts that stated, "Shut Down Guantanamo," some were in the process of putting the t-shirts on over their regular clothing, and others were removing a layer of outer clothing revealing the orange t-shirts. Within this larger group, a smaller group was dressed in orange jump suits; a few also had black hoods. This group carried a black banner that read, "Close Guantanamo." Deputy Chief Dolan gave the protestors warnings that they would be arrested if they did not desist their actions. Lieutenant Peebles appeared to give warnings as well. The kneeling demonstrators refused to leave, and as a result, were arrested and photographed in the Supreme Court's police annex.

---

2. During trial, Corporal Quigley testified that a group of thirty-six demonstrators entered the plaza. The record notes that thirty-five, as opposed to thirty-six, individuals entered the plaza. This discrepancy has no bearing on the issues on appeal.

## II.

Appellants first contend that their convictions must be vacated because the "display" clause of 40 U.S.C. § 6135 violates their First Amendment right to freedom of speech.[3] Appellants attack the display clause in two ways. First, it is argued that the statute has been unduly interpreted to prohibit non-disruptive forms of expression such as picketing and leaf-letting in the Supreme Court building or grounds. *See United States v. Grace*, 461 U.S. 171, 181 n. 10, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983); *see also Potts v. United States*, 919 A.2d 1127, 1130 (D.C.2007) (affirming that "almost any sign or leaflet carrying a communication" would violate the display clause). Second, appellants argue that the display clause is unnecessary surplusage in light of the assemblage clause in 40 U.S.C. § 6135.

■■■ Where, as here, appellants fail to object to the constitutionality of the display clause during the trial court proceedings, this court reviews appellants' claim for plain error. *See Bonowitz v. United States*, 741 A.2d 18, 23 n. 6 (D.C.1999) (holding that an unpreserved claim that 40 U.S.C. § 13k, the predecessor of the statute before this court, was void for vagueness was to be reviewed for plain error). To prevail, appellants must demonstrate that an error occurred, that the error was plain, and that the error was material or affected the appellant's substantial rights. *United States v. Olano*, 507 U.S. 725, 731–32, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Even when appellants meet these, criteria,

---

3. The full text of 40 U.S.C. § 6135 is as follows: "It is unlawful to parade, stand, or move in processions or assemblages in the Supreme Court Building or grounds, or to display in the Building and grounds a flag, banner, or device designed or adapted to bring into public notice a party, organization, or movement."

however, this court retains discretion whether to correct the error, and should do so only if the "error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

 Appellants fail to demonstrate that the trial court erred, much less plainly erred, by convicting appellants for violating the display clause of 40 U.S.C. § 6135.[4] It is well settled that "[t]he First ... Amendment[ ] ha[s] never been thought to give absolute protection to every individual to speak whenever or wherever he pleases or to use any form of address in any circumstances he chooses." *Cohen v. California,* 403 U.S. 15, 16–17, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). "[T]he statutory restriction on expression at issue here [40 U.S.C. § 6135] is reasonable as a measure", among other purposes, "to preserve the appearance of the Court as a body not swayed by external influence." *Potts,* 919 A.2d at 1129 (citations omitted).[5] The disruptiveness of a particular form of expression is not the primary harm the statute seeks to avoid. Rather, the statute prohibits expression such as picketing, leafletting, and wearing t-shirts with protest slogans because such expression is "designed ... to bring into public notice [a] party, organization or movement," *Potts,* 919 A.2d at 1130, for the purpose of swaying the opinion of the Supreme Court.[6] Furthermore, even if appellants were able to demonstrate that their "particular conduct did not threaten the harms sought to be avoided[,]" *Potts,* 919 A.2d at 1129, the statute cannot be declared unconstitutional because "the validity of the [statute] depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interests in an individual case." *Ward v. Rock Against Racism,* 491 U.S. 781, 801, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

Appellants' second argument, that the display clause is unnecessary surplusage in light of the assemblage clause, is also meritless. A plain reading of the statute's text reveals that the assemblage and display clauses proscribe different conduct in furtherance of the statute's stated purposes. While the assemblage clause prohibits expression based on the formation of groups, the display clause prohibits certain types of expression carried out by lone individuals as well as by groups of people. *See generally United States v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983); *Potts v. United States,* 919 A.2d 1127 (D.C. 2007); *Bonowitz v. United States,* 741 A.2d 18 (D.C.1999); *United States v. Wall,* 521 A.2d 1140 (D.C.1987).

## III.

 Appellants' second contention is that their convictions should be reversed because the police officers did not specifically tell them that they could lawfully demonstrate on the public sidewalk abutting the Supreme Court. We review this contention *de novo, see Farina v. United States,* 622 A.2d 50, 55 n. 7 (D.C.1993), and conclude that 40 U.S.C. § 6135 is not un-

---

4. The trial judge convicted the inside appellants under a general verdict, but convicted the outside appellants for specifically violating both the assemblages and display sections of the statute.

5. The statute was also enacted "to permit the unimpeded access and egress of litigants and visitors to the Court," *Potts,* 919 A.2d at 1129, and "to provide for the protection of the [Su-

preme Court] building and grounds and of persons and property within, as well as the maintenance of proper order and decorum." *Grace,* 461 U.S. at 182, 103 S.Ct. 1702.

6. This court "will [not] overrule a prior decision of this court ... such [a] result can only be accomplished by this court en banc." *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

**28**

duly vague and provides adequate notice of unlawful activity. *Cf. Potts,* 919 A.2d at 1131 n. 3 (appellants were provided "fair warning that their conduct was prohibited[,]" appellants "were not entitled to [any] other warnings"). Appellants were provided sufficient and clear warnings that they would be arrested if they continued the demonstrations on the plaza and in the building. We conclude that this contention lacks merit.

### IV.

■■■ Appellants' final contention, that the display clause's use of the word "and" is conjunctive, not disjunctive, is reviewed for plain error.[7] At bottom, appellants contend that in order to violate the display clause, one must "display" both in the Supreme Court building *and* on its grounds. Contrary to appellants' assertions, a device need not be displayed both in the building and on the plaza in order to produce the harm the statute seeks to avoid. An individual displaying a device in either locale results in the appearance that the Supreme Court may be swayed by external influences, and is therefore prohibited.[8] Thus, appellants final contention is also meritless, and the trial court did not plainly err in convicting appellants for violating the display clause; indeed there was no error.

Accordingly, the judgment of the trial court is affirmed.

*So ordered.*

■■■■

---

**7.** Appellants failed to raise this argument before the trial court.

**8.** *See also* H.R.Rep. No. 107–479, at 1–3, *reprinted in* 2002 U.S.C.C.A.N. 827, 828–29 (no substantive change was made when Congress re-codified the statute; the re-codified statute

changed the words of the display clause to read "in the Building and grounds," as opposed to the previous "therein" that referred to the assemblage clause's "Building or grounds"; "this bill makes no substantive change in the law").